**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   CV 12-01006 JGB (RZx)                      Date: March 11,2012

Title:      JW PHARMACEUTICAL CORP. -*v*- MICHAEL KAHN & PRISM
            PHARMA CO., LTD.
==============================================================
PRESENT:       HONORABLE JESUS G. BERNAL, U.S. DISTRICT JUDGE

            Maynor Galvez                         Victoria Valine
            Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR                 ATTORNEYS PRESENT FOR
PLAINTIFF:                            DEFENDANTS:

            Donald Kula                           Jennifer Brockett
                                                  Brian F. McMahon

PROCEEDINGS:        ORDER (1) GRANTING JW PHARMACEUTICAL'S MOTION
                    TO DROP MISJOINED DEFENDANT PRISM PHARMA CO.,
                    LTD. (Doc. No. 90); (2) DENYING PRISM'S MOTION TO
                    DISMISS AND FOR COSTS (Doc. No. 93); (3) DENYING
                    KAHN'S MOTION FOR JUDGMENT ON THE PLEADINGS
                    (Doc. No. 85); AND (4) DENYING KAHN'S MOTION FOR
                    BOND SECURITY FOR COSTS (Doc. No. 86) (IN
                    CHAMBERS)

       Before the Court are (1) a Motion to Drop Misjoined Defendant PRISM Pharma
Co., Ltd. filed by Plaintiff JW Pharmaceutical Corp. ("JWP") (Doc. No. 90); (2) a
Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter
Jurisdiction and for Costs filed by Defendant PRISM Pharma Co., Ltd. ("Prism")
(Doc. No. 93); (3) a Motion for Judgment on the Pleadings as to the Second Claim

MINUTES FORM 11                                 Initials of Deputy Clerk   MG   :45
CIVIL -- GEN                     Page 1

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

for Relief filed by Defendant Michael Kahn ("Kahn") (Doc. No. 85); and (4) a Motion for Security for Costs filed by Kahn (Doc. No. 86).   After considering the papers supporting and opposing the Motions and the arguments presented at the hearing on March 11, 2013, the Court (1) GRANTS JWP's motion to drop Prism as a misjoined defendant; (2) DENIES Prism's motion to dismiss for lack of subject matter jurisdiction and for costs; (3) DENIES Kahn's motion for judgment on the pleadings on the second claim for relief; and (4) DENIES Kahn's motion for bond security for costs and attorneys' fees.

# I. BACKGROUND

## A.   Procedural Background

On February 6, 2012, Plaintiff JWP filed its Complaint against Defendants Kahn and Prism alleging claims for (1) breach of warranty, (2) breach of license, (3) fraud, (4) breach of Consulting Services Agreement ("CSA"), (5) breach of Sponsored Research Agreement ("SRA"), (6) breach of Confidentiality Agreement ("CA"), and (7) misappropriation of trade secrets.  (Compl., Doc. No. 1.)

On July 9, 2012, the Court (Kronstadt, J.) held a hearing on Kahn's motion to dismiss the fourth, fifth, sixth and seventh claims for failure to state a claim and Prism's motion to dismiss the third and seventh claims for failure to state a claim and for lack of in personam jurisdiction and inconvenient forum.  (Minutes, Doc. No. 41.) The Court dismissed JWP's third and seventh claims for fraud and misappropriation of trade secrets with leave to amend.  (Minutes at 1.)  The Court permitted JWP to conduct limited jurisdictional discovery regarding issues related to personal jurisdiction before making a final ruling, although it tentatively found that personal jurisdiction over Prism was established.  (Minutes at 3.)  The Court declined to reach the motion to dismiss for forum non conveniens.  (Minutes at 3.)  On October 23, 2012, the Court granted Prism's request to dismiss the doctrine of forum non conveniens from its motion to dismiss and made its finding of personal jurisdiction final.  (Doc. No. 81.)

On July 30, 2012, JWP filed a First Amended Complaint.  (FAC, Doc. No. 49.) Upon stipulation by the parties, the Court granted JWP leave to file a Second

Amended Complaint. (Doc. No. 66.) On September 6, 2012, JWP filed the operative Second Amended Complaint which alleges claims for (1) breach of warranty, (2) breach of license, (6) breach of CSA, (7) breach of SRA, and (8) breach of CA against Kahn only. (SAC, ¶¶ 117-130, 174-204, Doc. No. 67.) The SAC also brings a claim for (4) aiding and abetting fraud against Prism only. (SAC, ¶¶ 164-168.) Finally, the SAC alleges three claims against both Kahn and Prism for (3) fraud, (5) civil conspiracy to commit fraud, and (9) misappropriation of trade secrets. (SAC, ¶¶ 131-163, 169-173, 205-212.) Kahn and Prism answered on September 19, 2012. (Doc. Nos. 68, 69.)

On June 26, 2012, pursuant to a stipulation by the parties, the Court (Kronstadt, J.) ordered JWP to post a bond in the amount of $250,000 by July 23, 2012 to pay any costs and attorneys' fees that may be awarded to Kahn in the action. (Doc. No. 40.) After an amended stipulation, the Court extended the deadline to post the bond to July 26, 2012, and ordered that the bond shall be governed by Cal. Civ. Pro. Code § 1030. (Doc. No. 48.)

Four motions are at issue here. First, on November 12, 2012, Defendant Kahn filed a motion for judgment on the pleadings as to JWP's second claim for relief. (MJP, Doc. No. 85.) JWP opposed on December 3, 2012. (MJP Opp'n, Doc. No. 92.) Kahn replied on December 17, 2012. (MJP Reply, Doc. No. 95.)    Second, on November 26, 2012, Defendant Kahn filed a motion for bond security for costs. (MSC, Doc. No. 86.) JWP opposed on December 24, 2012. (MSC Opp'n, Doc. Nos. 99, 110.)[1] Kahn replied on December 31, 2012. (MSC Reply, Doc. No 104.) Third, on November 28, 2012, Plaintiff JWP filed a motion to drop misjoined Defendant Prism. (MDMD, Doc. No. 90.) Prism opposed on December 21, 2012. (MDMD Opp'n, Doc. No. 97.) JWP replied on December 26, 2012. (MDMD Reply, Doc. No. 102.) Fourth, on December 14, 2012, Defendant Prism filed a motion to dismiss the SAC for lack of subject matter jurisdiction and for costs. (MTD, Doc. No. 93.) JWP opposed on December 26, 2012. (MTD Opp'n, Doc. No. 102.) Prism replied on January 2, 2013. (MTD Reply, Doc. No 106.)

---

[1] JWP filed both a redacted, public version (Doc. No. 99) of its opposition to the motion for security for costs, and a sealed version (Doc. No. 110). In its opinion, the Court cites to the public version throughout.

MINUTES FORM 11                                    Initials of Deputy Clerk  MG  :45
CIVIL -- GEN                        Page 3

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

## B.     Factual Background & Plaintiff's Allegations

Plaintiff JWP is a company organized and existing under the laws of the Republic of Korea with its principal place of business therein.  (SAC, ¶ 1.) Defendant Kahn is an individual who is a citizen of California, and Defendant Prism is a corporation organized and existing under the laws of Japan.  (SAC, ¶ 2.)

JWP is a pharmaceutical company that designs and develops drugs and funds independent research into new products.  (SAC, ¶ 7.)  Kahn is a professor of biochemistry, molecular biology, medicine and pharmacy at USC Keck School of Medicine and a founder and part owner of Prism.  (SAC, ¶ 8.)  Prism is a drug discovery company that utilizes a "Protein Secondary Structure Mimetic Library approach developed by Professor Michael Kahn."  (SAC, ¶ 9.)

According to the SAC, JWP financed pharmaceutical research conducted by Kahn from at least 2000 to 2005, and helped Kahn found his own lab, the Institute for Chemical Genomics ("ICG").  (SAC, ¶ 11.)  On May 16, 2004, Kahn entered into a three-year Consulting Services Agreement ("CSA") and Sponsored Research Agreement ("SRA") with JWP.  (SAC, ¶¶ 23-24.)  Under these agreements, JWP committed to provide Kahn access to its confidential information, including research data, plans and insights and to provide substantial funding for specific sets of research activities.  (SAC, ¶ 25.)  Kahn was expected to perform the research, maintain and protect the confidentiality of JWP's proprietary information, and transfer ownership rights to JWP of all resulting inventions, findings, conclusions and data, discoveries, trade secrets, techniques, processes and know-how resulting from JWP-funded research.  (SAC, ¶¶ 25, 30.)  Kahn also entered into a Confidentiality Agreement ("CA") with JWP on August 4, 2004. (SAC, ¶ 38.)  As defined in the agreement, confidential information included the structure and activity of chemical compositions, biomaterials, microorganisms, cells, cell lines and the progeny and derivatives thereof, as well as patent applications, inventions, discoveries, improvements, know-how, ideas, research projects, and intellectual property of JWP. (SAC, ¶ 38.)  Kahn was obligated to hold the information in confidence for five years from the date of the CA.  (SAC, ¶ 39.)

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

JWP alleges that much of Kahn's research during this time related to the Wnt/β-catenin signaling pathway, which is a network of proteins that are thought to play a key role in the development of cancer.  (SAC, ¶¶  21, 26.)  As part of the research under the agreements, JWP alleges that JWP, Kahn and Kahn's prior lab, ICG, developed numerous compounds designed to manipulate and regulate the signaling pathway, including ICG-001 (U.S. Patent No. 6,762,185), and the CWP Turn Group compounds (International Patent Publication No. WO/2005/116032). (SAC, ¶ 27.)  JWP claims it currently owns the patent rights to ICG-001 and the CWP Turn Group.  (SAC, ¶ 69.)

JWP alleges that it performed its obligations under the three agreements, and provided Kahn with the results of JWP's independent research including disclosures of newly developed compounds, methods of synthesizing those compounds, and data providing a roadmap for where to target new compounds.  (SAC, ¶ 42.) However, on July 8, 2005, Kahn notified JWP that he resigned his post as the head of ICG effective June 30, 2005, citing his "distaste for dealing with [JWP] middle management's bureaucratic efforts to micromanage my research programs."  (SAC, ¶ 48.)   JWP alleges that it requested the return of all materials and information as required by the CSA and SRA, but Kahn refused the request.  (SAC, ¶ 52.)  JWP also alleges that it discovered that Kahn had secretly filed multiple patent applications in areas related to the research funded by JWP, which was expressly barred by the agreements.  (SAC, ¶ 53.)

On July 13, 2006, JWP filed a lawsuit against Kahn and ICG for breach of contract and misappropriation of trade secrets. (SAC, ¶ 54.)  JWP alleges that it did not include Prism as a defendant because Kahn never identified the existence or activities of Prism.  (SAC, ¶ 55.)  According to JWP, Kahn founded Prism in November 2006 in Japan as a competitor to JWP.  (SAC, ¶ 57.)  In addition to founding the company, JWP alleges that Kahn is a member of Prism's Board of Directors, the head of Prism's Scientific Advisory Board, receives a commercial research grant from Prism, and has an ownership interest in Prism and its patent rights.  (SAC, ¶ 58.)  JWP believes that Kahn provided Prism with JWP's confidential research and information which they used to develop drugs in competition with JWP. (SAC, ¶¶ 59-60.)  In late 2006, Kahn also joined the faculty of USC.  (SAC, ¶ 54.)

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

After 16 months of negotiations, JWP, Kahn, and ICG reached a Settlement Agreement regarding the claims in the 2006 complaint which was executed on November 1, 2007.  (SAC, ¶ 63.)  According to JWP, Kahn continued to withhold his creation and collaboration with Prism during these negotiations and resulting settlement.  (SAC, ¶ 64.)  The Settlement Agreement granted Kahn a release of "all claims made or which could have been made in the Litigation based upon the information which is presently known or reasonably should have been known by the parties as of the date of execution of the Settlement Agreement."  (SAC, ¶ 66.)  JWP also granted Kahn a royalty free license to make and use ICG-001 for the limited purpose of non-commercially funded academic research.  (SAC, ¶ 69.)  In return, Kahn promised to assign all pending patent applications to JWP regarding JWP-funded research and return all materials belonging to JWP.  (SAC, ¶ 65.)  JWP was also granted ownership of all other intellecutal property resulting from the research that produced ICG-001 and the CWP Turn Group.  (SAC, ¶ 69.)  Finally, JWP secured a warranty of disclosure from Kahn, stating that Kahn disclosed all pending patent applications naming Kahn as an inventor and that Kahn did not plan to file additional patent application relating to the research funded by JWP in the six months following the execution of the Settlement Agreement.  (SAC, ¶ 73.)  Kahn also warranted that he was not aware of any other party that may have plans to file patent applications in the next six months that are based on research funded by JWP.  (SAC, ¶ 75.)

On June 6, 2008, one month after the expiration of the Settlement Agreement's warranty of disclosure, Prism filed a patent application in the U.S. Patent and Trademark Office, No. 61/059,607 for a cancer suppression drug called PRI-724.  (SAC, ¶ 76.)  Kahn is not listed as an inventor.  (SAC, ¶ 77.)  JWP alleges Kahn was intentionally omitted despite his participation in the conception, invention, and development of PRI-724.  (SAC, ¶¶ 77, 82.)   JWP claims PRI-724 is based on and derived from research Kahn conducted on ICG-001, funded by JWP and using JWP's confidential information.  (SAC, ¶ 79.)  In addition to statements in the media and other publications, JWP supports its allegation that ICG-001 was Kahn and Prism's starting point for PRI-724 by pointing to the similarity in the structure and function of ICG-001 and PRI-724.  (SAC, ¶¶ 80, 83.)  JWP alleges that Kahn and Prism collaboratively developed PRI-724 using JWP's confidential information and research results, which were made available by Kahn before or during the

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

settlement negotiations and Settlement Agreement.  (SAC, ¶¶ 95, 111.)  In an effort to evade JWP's detection, JWP alleges that Kahn and Prism have concealed their relationship, Kahn's transfer of confidential JWP information and materials to Prism, their use of that information in the development of PRI-724, and Kahn's role in the development of the compound.  (SAC, ¶¶ 104, 112.)  Finally, JWP makes several allegations regarding Kahn's control over Prism's scientific activity, business decisions, and strategic planning.  (SAC, ¶¶ 107-109.)

## II. LEGAL STANDARDS

### A.    Dismissal of Misjoined Defendant

Under Rule 21, "a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance."  Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir.1997). "Misjoinder of parties is not a ground for dismissing an action."  Fed. R. Civ. P. 21.  Upon a finding of misjoinder, a court has two remedial options: (a) misjoined parties may be dropped "on such terms as are just"; or (2) any claims against misjoined parties "may be severed and proceeded with separately."  Fed. R. Civ. P. 21.  "When a court 'drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice."  Harris v. Lappin, EDCV 06-0664VBF(AJW), 2009 WL 789756 (C.D. Cal. Mar. 19, 2009) (citing DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006)).

### B.    Dismissal for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure states: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction."  In order for a claim to be properly in the United States District Court, the Court must have either (1) federal question jurisdiction under 28 U.S.C. § 1331, or (2) diversity jurisdiction under 28 U.S.C. § 1332.  Here, Plaintiff does do not assert federal question jurisdiction.

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

In any case where subject matter jurisdiction depends on 28 U.S.C. § 1332, there must be complete diversity of the parties; that is, all plaintiffs must be of different citizenship than all defendants. <u>Strawbridge v. Curtiss</u>, 7 U.S. 267 (1806). Diversity jurisdiction may exist in certain cases involving foreign parties. 28 U.S.C. § 1332(a). The diversity requirement is met between "citizens of a State and citizens or subjects of a foreign state" and between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a). However, there is no jurisdiction in cases involving an alien plaintiff suing an alien defendant, even if there are citizen defendants present. <u>Faysound, Ltd. v. United Coconut Chemicals, Inc.</u>, 878 F.2d 290, 294-95 (9th Cir.1989); <u>Cheng v. Boeing</u>, Co., 708 F.2d 1406, 1412 (9th Cir.1983), cert. denied, 464 U.S. 1017 (1983).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact. <u>Thornhill Publ'g Co. v. Gen, Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir.1996).

## C.    Judgment on the Pleadings

A motion for judgment on the pleadings is a vehicle for summary adjudication, but the standard is like that of a motion to dismiss. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Dworkin v. Hustler Magazine, Inc.</u>, 867 F.2d 1188, 1192 (9th Cir. 1989). It is "functionally identical" to a motion to dismiss for failure to state a claim; the only significant difference is that a 12(c) motion is properly brought "after the pleadings are closed - but early enough not to delay trial." Fed. R. Civ. P. 12(c); <u>Dworkin</u>, 867 F.2d at 1192; <u>see</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 9:319-323.

The Court may grant judgment on the pleadings "when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996); Baker v. Citibank
(S.D.) N.A., 13 F. Supp. 2d 1037, 1044 (S.D. Cal. 1998).  The court must assume
the truthfulness of all material facts alleged and construe all inferences reasonably
to be drawn from the facts in favor of the responding party.  General Conference
Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,
887 F.2d 228, 230 (9th Cir. 1989); McGlinchy v. Shell Chemical Co., 845 F.2d 802,
810 (9th Cir. 1988); see NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.
1986).

## D.    Security for Costs

The Federal Rules of Civil Procedure do not contain a provision governing cost
bonds or other means for securing costs.  See Simulnet East Assocs. v. Ramada
Hotel Operating Co., 37 F.3d 573, 574 (9th Cir.1994).  "However, the federal district
courts have inherent power to require plaintiffs to post security for costs . . . .
Typically federal courts, either by rule or by case-to-case determination, follow the
forum state's practice with regard to security for costs, as they did prior to the federal
rules; this is especially common when a non-resident party is involved."  Simulnet,
37 F.3d at 574; see also Plata v. Darbun Enterprises, Inc., 09CV44-IEG CAB, 2009
WL 3153747, at *11 (S.D. Cal. Sept. 23, 2009).

Here, the forum state's statute regarding imposition of a cost bond is California
Code of Civil Procedure Section 1030.  Under Section 1030, a defendant may move
the court to issue a cost bond against a plaintiff who resides outside of California, or,
is a foreign corporation.  The defendant must also demonstrate that there is "a
reasonable possibility . . . [it] will obtain judgment in the action . . . ." Cal. Civ. Proc.
Code § 1030(b).  California state courts describe the purpose of Section 1030 as a
way to assist California defendants to "secure costs in light of the difficulty of
enforcing a judgment for costs against a person who is not within the court's
jurisdiction."  Shannon v. Sims Serv. Center, 164 Cal.App.3d 907, 913 (1985).

# III. DISCUSSION

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

## A.    Dismissal of Misjoined Defendant

JWP filed a motion requesting that the Court drop Prism from the SAC as a misjoined defendant pursuant to Fed. R. Civ. P. 21.  (MDMD at 1.)  JWP admits that with Prism as a party, the Court does not have subject matter jurisdiction over the action.  (MDMD at 4.)  Both JWP, a Korean corporation, and Prism, a Japanese corporation, are foreign parties, and therefore, complete diversity is lacking.  See Faysound Ltd. v. United Coconut Chemicals, Inc., 878 F.2d 290, 295 (9th Cir. 1989) ("[Plaintiff's] original complaint asserting that there was federal jurisdiction in a suit between 'citizens of a foreign state and citizens of foreign states and a citizen of a state of the United States' asserted jurisdiction where none existed.").

Rule 21 permits that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "[A] court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance."  Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997).  Specifically, the Ninth Circuit has found that it is proper for the court to dismiss a defendant under Rule 21 in order to preserve the court's subject matter jurisdiction.  See Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1154 (9th Cir. 1998) (affirming the district court's dismissal of three California entities pursuant to Rule 21 in order to create complete diversity among the remaining parties); Continental Airlines, Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519, 1523 (9th Cir.1987) ("[I]t is now settled in this circuit that practicality prevails over logic and that we may dismiss a dispensable, non-diverse party in order to perfect retroactively the district court's original jurisdiction.").

The Court finds that dismissing Prism is necessary to preserve the Court's subject-matter jurisdiction and that dismissal is proper under Rule 21.  Prism does not oppose the substance of JWP's MDMD, and does not offer any reason why Prism would be prejudiced by the severance or why dismissal would be unjust.  Kahn did not file an opposition to the MDMD.  The four claims for fraud, aiding and abetting fraud, conspiracy to commit fraud, and misappropriation of trade secrets alleged against Prism are intentional torts for which Defendants are jointly and severally liable.  See Restatement (Third) of Torts: Apportionment Liab. §§ 12, 15 (2000) (imposing joint and several liability on intentional tortfeasors).  The Court finds that as a joint tortfeasor, Prism is a dispensable party.  See Newman-Green,

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989) ("Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . . ."); id. at 838 ("[G]iven that all of the [defendants] are jointly and severally liable, it cannot be argued that Bettison was indispensable to the suit.").

Instead of addressing the merits of JWP's MDMD, Prism argues that JWP's motion was filed without properly meeting and conferring as required under Local Rule 7-3.  (MDMD Opp'n at 2.)  The Court finds that since the parties agree that dismissal of Prism is proper and the parties engaged in substantial discussion regarding the substantive issue and potential resolution by stipulation or motion, JWP's alleged failure to formally notify Prism of its intent to file the MDMD is not adequate cause for the Court to dismiss the motion. [2]

Since the Court has "authority to dismiss a dispensable nondiverse party," Newman-Green, 490 U.S. at 837, the Court GRANTS Plaintiff JWP's motion to drop misjoined Defendant Prism Pharma Co., Ltd. from this action WITHOUT PREJUDICE.

**B.    Dismissal for Lack of Subject Matter Jurisdiction**

Prism moves the Court to dismiss the case for lack of subject matter jurisdiction.  (MTD at 1.)  As Prism notes, the "parties agree that the Court lacks

---

[2] Prism admits that the parties discussed the substance of the subject matter jurisdiction issue in detail.  Prism notes that JWP proposed dropping Prism from the case and discussed the appropriate procedural mechanism JWP would use.  (Decl. of Brian F. McMahan, MTD Reply, Doc. No. 107, ¶ 3.)  JWP and Prism also "exchanged competing proposed stipulations to dismiss the case."  (Decl. of Michael N. Zachary, MTD, Doc. No. 94, ¶ 6.)  The Court finds that even under Prism's version of the facts the parties substantially complied with Local Rule 7-3 which requires counsel to "discuss thoroughly . . . the substance of the contemplated motion and any potential resolution."

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

jurisdiction" because complete diversity is lacking where there is a foreign plaintiff
and a foreign defendant. (Id.)  However, the Court's dismissal of Prism pursuant to
JWP's motion to drop Prism as a misjoined defendant restores the Court's subject
matter jurisdiction.  Thus, the substantive issue underlying Prism's motion is moot.

By granting JWP's motion to drop Prism as a misjoined defendant instead of
Prism's subsequently filed motion to dismiss the entire action for lack of subject
matter jurisdiction, the Court retains jurisdiction of the remaining Defendant in the
case.  The Supreme Court has found that retaining jurisdiction by dropping a
misjoined defendant is preferable to dismissal.  See Newman-Green, 490 U.S. at
837 (noting that if the suit were dismissed altogether for lack of subject matter
jurisdiction, the plaintiff would simply refile against the defendants in the district court
without the non-diverse parties and "[n]othing but a waste of time and resources
would be engendered by . . . forcing these parties to begin anew"); see also Fed. R.
Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action.").

## 1.    Costs

Recognizing that dismissal of Prism is warranted to restore subject matter
jurisdiction, Prism moves to the issue of costs.  Prism requests that the Court award
costs under 28 U.S.C. § 1919 which states that "[w]henever any action or suit is
dismissed in any district court . . . for want of jurisdiction, such court may order the
payment of just costs."

Prism requests that the Court award costs in the amount of $25,251.29 to
cover Prism's expenses to retain an ediscovery vendor to assist with responding to
JWP's document requests.  However, Section 1919 only allows the Court to order
the payment of costs if the Court "dismisse[s]" the "action . . . for want of jurisdiction."
28 U.S.C. § 1919.  As discussed above, the Court is not dismissing the action, but
instead dropping the misjoined defendant.  Therefore, pursuant to the plain language
of 28 U.S.C. § 1919, Section 1919 does not apply.

Prism argues that Section 1919 applies regardless of the Court's chosen
method of dismissal.  (MTD Reply at 3.)  Under Prism's reading of Section 1919, the
Court should award "just costs" if Prism is dropped as a misjoined party under Rule

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

21 or if the entire case is dismissed pursuant to Prism's motion to dismiss under Rule 12(b)(1).  However, Prism's reading of Section 1919 conflicts with the plain language of Rule 21.  Rule 21 states that "[m]isjoinder of parties is not a ground for dismissing an action."  Thus, when the Court drops Prism as a misjoined defendant, it is not "dismissing an action," as that would directly violate Rule 21.  In fact, the reverse is true; the Court is dropping the party in order to prevent the necessity of dismissal.  As such, the Court cannot award costs under Section 1919 because no "action or suit is dismissed."

The Court DENIES Prism's motion to dismiss for lack of subject matter jurisdiction and DENIES Prism's request for costs in the amount of $25,251.29.

**C.    Judgment on the Pleadings**

Kahn moves the Court to dismiss the SAC's second claim for relief for breach of license.  (MJP at 1.)  As the parties agree, the Court applies Washington law because the Settlement Agreement at issue in this claim directs that it "shall be interpreted, construed and enforced in accordance with the law of the State of Washington, regardless of its or any other jurisdiction's choice-of-law principles." (Settlement Agreement, SAC, Exh. 12, ¶ 28.)

At issue here is Paragraph 12 of the Settlement Agreement which states:

> "Freedom to conduct research: License to Kahn - ICG-001. Kahn shall have a royalty free license to make and use ICG-001 as claimed in U.S. Patent No. 6,762,185 ('185 Patent) and as depicted in Schedule E for the purpose of noncommercially funded academic research only. Any academic collaborator who is working directly with Kahn or who is working on a research grant funded by a government grant or other non-commercial entity in which Kahn is a named investigator shall have a royalty free license to make and use ICG-001 for the purpose of the non-commercial academic research conducted by Kahn. This license shall not extend to any research conducted by any academic collaborator that is unrelated to the research being conducted by Kahn, nor shall it extend to any other use of ICG-001 by Kahn."

(Settlement Agreement, ¶ 12.)

First, the Court denies JWP's request to convert the instant motion into one for summary judgment. (MJP Opp'n at 8.) As JWP admits, discovery is incomplete, thus a motion for summary judgment is premature. See Century Sur. Co. v. Master Design Drywall, Inc., 09CV0280-LAB (AJB), 2009 WL 3425326 (S.D. Cal. Oct. 21, 2009); E.E.O.C. v. Creative Networks, LLC, Case No. CV 05–3032, 2006 WL 3834286, at *3 (D.Ariz. Dec. 29, 2006) (refusing to convert motion to dismiss into motion for summary judgment, based on documents extraneous to complaint, because preliminary stages of discovery had not occurred). Since, as discussed above, the standard for a motion for judgment on the pleadings is that of a motion to dismiss, the Court will not consider materials outside of the complaint, including extrinsic evidence provided in declarations.[3] See XL Specialty Ins. Co. v. Perry, CV 11-02078-RGK JCGX, 2012 WL 6800780, at *4 (C.D. Cal. Jan. 26, 2012) ("[A]ny evidence beyond the pleadings that could only be presented to the Court following discovery would not be appropriately before the Court on a motion for judgment on the pleadings. Such evidence would be properly before the Court on a motion for summary judgment."); Qwest Communications Corp. v. City of Berkeley, 208 F.R.D. 288, 291 (N.D. Cal. 2002) (On a motion for judgment on the pleading, "a court may consider only allegations made in the complaint and the answer; extrinsic factual material may not be taken into account.").

Turning to the substantive issues, the parties primary disagreement is whether Paragraph 12 allows for remedies in contract or patent. Kahn argues that as a non-exclusive patent license, Paragraph 12 limits JWP to remedies for patent infringement for any use of ICG-001 beyond the scope of the license. Under Kahn's interpretation, the only way JWP can recover in contract is if the Court finds that Paragraph 12 includes an implied covenant forbidding Kahn from using ICG-001 for

_____

[3] The Court notes that the standard proposed by JWP, that is, "do genuine issues of material fact exist for trial?" is not the appropriate standard for this motion. (MJP Opp'n at 9.) Instead, the Court considers whether Kahn is entitled to judgment as a matter of law, taking all the allegations in the complaint as true and construing them in the light most favorable to JWP. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir.1989).

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

commercial purposes.  JWP argues that Paragraph 12 contains an express promise by Kahn, and therefore should be interpreted as express contract provision, breach of which is actionable under contract law.

The Court notes that the primary means of enforcing a patent license limitation is through an infringement claim.  See United States v. Studiengesellschaft Kohle, 670 F.2d 1122, 1127 (D.C. Cir.1981) ("A license is an agreement by the patentee . . . not to sue the licensee of the patent for infringement of the patent.").  Therefore, a contract suit for breach of a patent license limitation is unusual, but not barred.  See Modern Licensing Law § 11:24 (2012) ("Stepping outside the terms of the protective scope of a license exposes the licensee to claims for infringement and breach."); Omri Ben-Shahar, Damages for Unlicensed Use, 78 U. Chi. L. Rev. 7, 9 (2011). Cf. Massillon-Cleveland-Akron Sign Co. v. Golden State Adver. Co., 444 F.2d 425, 428 (9th Cir. 1971).

Next the Court turns to the primary language at issue within Paragraph 12, namely that the license was limited to "non-commercially funded academic research only" and that the "license shall not . . . extend to any other use of ICG-001 by Kahn."  The Court must examine whether this language constitutes an express, or alternatively, an implied covenant not to use ICG-001 for purposes outside the scope of the license.

Contract interpretation is generally a question of law for the court.  See Berg v. Hudesman, 115 Wash.2d 657, 663 (1990).  Under Washington law, courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."  Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wash.2d 493, 504 (2005).  If the language of a contract is clear and unambiguous, the Court must "enforce the contract as written; it may not modify the contract or create ambiguity where none exists."  Lehrer v. State Dep't of Social & Health Servs., 101 Wash.App. 509, 515 (2000).  "Where the parties' contractual language is ambiguous, the principal goal of construction is to search out the parties' intent."  Jones Assocs., Inc. v. Eastside Props., Inc., 41 Wash.App. 462, 467 (1985).  "Language is ambiguous if, on its face, it is fairly susceptible to more than one reasonable interpretation."  Mendoza v. Rivera–Chavez, 88 Wash.App. 261, 268 (1997) (quotation and citation omitted).

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

Here, the "reasonable meaning of the words used" unambiguously require Kahn not to use ICG-001 for any purpose outside of non-commercially funded academic research. Hearst, 154 Wash. at 503. The "ordinary, usual, and popular" use of the word "only" limits Kahn to making and using ICG-001 for that one purpose. Id. at 504. Kahn is not licensed to used ICG-001 for any other purpose, and by doing so, violates the contract. The final sentence of the paragraph supports this interpretation. "The license shall not extend . . . to any other use of ICG-001 by Kahn." Again, any other use of ICG-001 except for non-commercially funded research is not covered by the license and thus, violates the provision. In the SAC, JWP alleges that Kahn produced ICG-001 for commercial purposes. Commercial purposes are clearly outside the scope of non-commercial academic research, and if proved, would breach the license described in Paragraph 12.

Since the Court finds that the express language of the agreement is sufficient to create a covenant, the Court need not rely on Kahn's theory that the Court must imply a negative covenant into Paragraph 12. See Brown v. Safeway Stores, Inc., 94 Wash. 2d 359, 370 (1980) (refusing to imply a covenant limiting the right to assign or sublease when the lease clearly gave the lessee an unconditional right to do so). An implied negative covenant was required where, for example, the agreement granted a license "to make, use, and/or sell filaments having . . . a maximum cross-sectional dimension of not more than 5 mils (.005 inches)." Shaw v. E. I. DuPont De Nemours & Co., 126 Vt. 206, 208 (1966). In Shaw, under Vermont law, the court found that the license included an implied agreement that the "licensee will not invade the ungranted part of the patent" and held that a claim for breach of contract survived where defendant manufactured filaments larger than specified. Id. at 209.[4]

---------------

[4] The Court recognizes that in other cases courts have not been willing to imply a negative covenant in the patent context. See Oliver v. Flow Int'l Corp., 137 Wash. App. 655, 661 (2007); Florida Canada Corp. v. Union Carbide Corp., 280 F.2d 193 (6th Cir.1960); Eli Lilly & Co. v. Genentech, Inc., IP 87-219-C, 1990 WL 305392 (S.D. Ind. July 17, 1990). However, because the Court finds that the license agreement in Paragraph 12 contains an express covenant, these cases are inapposite to the outcome here.

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

By comparison in <u>Eli Lilly & Co. v. Emisphere Technologies, Inc.</u>, 408 F. Supp. 2d 668 (S.D. Ind. 2006), the court found that the express language of the license agreement created a promise by the licensee not to exceed the scope of the license, and no implied covenant was needed.  The court held that, by its plain terms, the key provision – "Lilly shall not have any rights to use the Emisphere Technology or Emisphere Program Technology other than insofar as they relate directly to the Field and are expressly granted herein" – barred Lilly from using the patented technology outside the agreed field.  <u>Id.</u> at 685.  The court reasoned that when the licensee ventured beyond the limits of the license by engaging in secret research projects, it risked a claim of patent infringement and breached the contract that gave it the limited license.  <u>Id.</u> at  690-91.  Although <u>Lilly</u> is only persuasive and not binding authority, the similarities between the cases are striking and further support the Court's reading of Paragraph 12.  Like in <u>Lilly</u>, an express provision limits Kahn's use of the ICG-001 patent by stating that any use not expressly granted is prohibited, and violation of that provision opened up the licensee to liability in patent or contract.


Because Paragraph 12 contains a express covenant that limits Kahn's use of the ICG-001 patent to non-commercial academic research, JWP's second claim for relief adequately states a claim for breach of license and Kahn is not entitled to judgment on the pleadings.  Kahn's motion for judgement on the pleadings as to JWP's second claim is DENIED.


**D.    Security for Costs**

Kahn moves the Court to order JWP to increase its bond security from $250,000, which was posted with the Court on July 26, 2012 by stipulation of the parties, to $750,000.  (MSC at 1.)   Kahn seeks this increase pursuant to Cal. Civ. Proc. Code § 1030 which states that "[w]hen the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding."   Cal. Civ. Proc. Code § 1030(a).

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

The Ninth Circuit notes that "[t]here is no specific provision in the Federal Rules of Civil Procedure relating to security for costs. . . . Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with regard to security for costs . . . ."  Simulnet E. Associates v. Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994).  In California, Section 1030 allows the court to order plaintiff to post a bond when (1) "the plaintiff resides out of the state or is a foreign corporation" and (2) "there is a reasonable possibility that the moving defendant will obtain judgment in the action." Cal. Civ. Proc. Code § 1030(b). The purpose of Section 1030 is to afford security for an award of costs which the defendant might otherwise have difficulty enforcing against a nonresident plaintiff. Cal. Civ. Proc. Code § 1030, Law Revision Commission Comments.

In the instant suit, there is no dispute that the first criteria under Section 1030 is met, as JWP alleges it is a corporation existing under the law of Korea.  (SAC, ¶ 1.)

As to the second element, many courts in the Ninth Circuit consider the following factors: "(i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective.  Courts may also consider the absence of attachable property within the district, the conduct of the parties, and the plaintiff's ability to post the bond."  Gabriel Technologies Corp. v. Qualcomm Inc., 08 CV 1992 MMA POR, 2010 WL 3718848, at *2 (S.D. Cal. Sept. 20, 2010) (citing Simulnet, 37 F.3d at 576).

The parties disagree over whether Kahn has demonstrated a "reasonable possibility" that he will obtain a judgment in the action.[5]  Cal. Civ. Proc. Code § 1030(b).  In support of his arguments on the merits, Kahn submits only his own

_____

[5] JWP argues that Kahn must show that "there is no reasonable possibility" JWP will prevail.  (MSC Opp'n at 6) (citing Yao v. Super. Ct., 104 Cal. App. 4th 327, 333 (2002).)  However, this standard directly contradicts the language of the statute, and has subsequently been refuted by district courts in this state.  See Gabriel Technologies, 2010 WL 3718848, at *4 (noting that the "higher burden proposed by Plaintiffs contradicts the clear language of the statute").

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

declaration with no supporting exhibits or testimony.[6]  (See Decl. of Michale Kahn, Doc. No. 87.)  The Court finds that Kahn's unsubstantiated assertions of non-liability are not sufficient to demonstrate a reasonable possibility of success on the merits. See Ismart Int'l Ltd. v. I-Docsecure, LLC, C-04-03114 RMW, 2005 WL 588607, at *9 (N.D. Cal. Feb. 14, 2005) (finding that defendants failed to meet the reasonable possibility standard where "defendants have not argued or offered evidence to substantively refute ISM's claims").  Kahn argues that he cannot "affirmatively present corroborating documentation" to show that he did not misappropriate or misuse confidential information.  (MSC Reply at 4.)  The Court finds this argument unpersuasive.  Kahn could have supplied supporting declarations from non-parties, including fellow scientists at Prism or from his prior lab ICG, to provide support for arguments that "he did not use ICG-002 to optimize or produce PRI-714" (Kahn Decl., ¶ 6) or that "he has not disclosed any" trade secrets or confidential information to Prism (Kahn Decl., ¶ 13.).  Faced with only Kahn's assertions of non-liability on the one hand and voluminous exhibits by JWP demonstrating that Kahn's prior work with ICG-001 played a role in the development of PRI-724, the Court does not find that Kahn has met the standard of demonstrating a reasonable possibility of judgment on the merits.  (See MSC Opp'n, Exhs. 1-20.)

For example, to refute JWP's second claim for breach of license, Kahn makes two arguments.  First, Kahn relies on the unsubstantiated assertion in his declaration that he "did not use ICG-001 to optimize or produce PRI-724."  (Kahn Decl, ¶ 11.)  Second, he relies on the arguments made in his MJP that he did not promise he would not make or use ICG-001 for any commercial purpose.  (MSC at 6.)  The Court denied Kahn's arguments in the MJP above, therefore, all that Kahn puts forth to demonstrate a reasonably possibility of success are his bald assertions.  The Court finds these are not sufficient to meet the standard outlined in Section 1030. See Ismart, 2005 WL 588607, at *9 ("It is the defendants' prerogative to move for dismissal and address potential procedural defects prior to answering plaintiff's claims on the merits, however, it is also their burden to prove reasonable possibility of obtaining a judgment before they are entitled to security for costs.").

_____

[6] Kahn also submitted a declaration from his attorney, Stuart R. Dunwood, which goes primarily to the issue of the reasonableness of the amount requested for the bond and not to the merits arguments.  (See Decl. of Stuart R. Dunwood, Doc. No. 88.)

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

Other factors also weigh against Kahn's request for an additional $500,000 bond.  The presence of attachable property sufficient to satisfy Kahn's attorneys' fees and costs weighs against Kahn's bond request.  Simulnet, 37 F.3d at 576.  JWP puts forth evidence to show it has considerable assets in the United States, including a wholly-owned subsidiary located in Seattle, Washington whose capital assets are worth more than the bond sought here as well as rights to 20 U.S. patents.  (MSC Opp'n at 5; Decl. of Miky Hahn, Doc. No. 100, ¶¶ 3-6.)  Although this property is not "within the district," courts have routinely looked at whether the plaintiff has assets anywhere in the United States because a judgment issued by this Court would be enforceable in any federal district court.  See Susilo v. Wells Fargo Bank, N.A., CV 11-1814 CAS PJWX, 2012 WL 5896577, at *2 (C.D. Cal. Nov. 19, 2012) (denying the bond request where there is "no showing that plaintiff lacks attachable assets in California or the United States"); see also 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . .").

Moreover, the conduct of the parties weighs against awarding Kahn an increase in the amount of the bond.  Simulnet, 37 F.3d at 576.  JWP, by stipulation, agreed to put up a $250,000 bond on July 26, 2012.  (Doc. No. 48.)  This showing of good faith by JWP should mitigate Kahn's fear that he will "have difficulty enforcing a judgment for costs against a person who is not within the court's jurisdiction." Shannon v. Sims Service Center, Inc., 164 Cal.App.3d 907, 913 (1985).

The Court notes that JWP does not dispute that the extent of the security to be posted is reasonable or that JWP would be financially able to post the bond. Simulnet, 37 F.3d at 576.  However, these factors are not determinative.  See Susilo, 2012 WL 5896577, at *2 (denying defendant's motion for bond security even where "there is no showing that plaintiff lacks assets to pay defendants' purported $225,000 in costs and attorney's fees").

The Court finds that the balance of factors weighs against awarding Kahn bond security under Cal. Civ. Proc. Code § 1030.  Accordingly, the Court DENIES Kahn's motion for security for costs and attorneys' fees.

## IV. CONCLUSION

MINUTES FORM 11                                    Initials of Deputy Clerk  MG  :45
CIVIL -- GEN                        Page 20

CV 12-01006 JGB (RZx)
JW PHARMACEUTICAL CORP. v. MICHAEL KAHN & PRISM PHARMA CO., LTD.
ORDER of March 12, 2013

For the foregoing reasons, the Court:

(1) GRANTS JWP's motion to drop Prism as a misjoined defendant WITHOUT
PREJUDICE;
(2) DENIES Prism's motion to dismiss for lack of subject matter jurisdiction and
for costs;
(3) DENIES Kahn's motion for judgment on the pleadings on the second claim
for relief; and
(4) DENIES Kahn's motion for bond security for costs and attorneys' fees.

**IT IS SO ORDERED.**